Thank you, you may be seated. Our next case is case number 417-0293, the people of the state of Illinois v. Treshawn Jake. We'll show the appellant present by counsel Mr. Harris and the appellee by counsel Mr. Manchin. You may proceed, counsel. Your Honors, I'm Assistant Appellate Defender Levi Harris and I'm appearing for my client, the appellant Treshawn Jake. May it please the court, as I'm sure this court is no doubt aware this case was here before this court about four years ago on direct appeal and the underlying claim on post-conviction that we're arguing about today was raised on direct appeal. This court said, hey, we don't have enough in the record, why don't you go and put this in a post-conviction petition, develop the record specifically for that claim and work through it in that proceeding. So that's the proceeding through which this claim arises. We're here today asking the court to reverse and remand for second stage post-conviction proceedings where post-conviction counsel in this case did not substantially comply with the Illinois Supreme Court's Rule 651C. The 651C requires three things of post-conviction counsel. It requires the counsel to consult with the petitioner to ascertain his claims, to examine the record of trial, and to make any amendments to the petition necessary to advance the petitioner's claims. Now counsel here, counsel at the trial court level did file a 651 certificate, correct? Correct. And so there's a presumption that attaches to the filing of that certificate, is that correct? Correct. In fact, there's a rebuttable presumption, Your Honor, and our argument is that the facts of the case, both in his amended petition and in the things that he said in court, rebut that presumption. Why don't you go into for us how the presumption is rebutted, what evidence rebutts it? So as I said, there are three things in 651C. Two out of three of them we're arguing that counsel did not do. The first one is that he failed to consult with Treshawn adequately to ascertain what his claims were. So you agree that counsel did consult with your client? According to his certificate, he didn't. We don't have any reason to disagree with that. So you've added this word, adequately consult. Why? Your Honor, I think that, at least our argument would be that, the duty to consult would also convey some sort of a duty to consult well enough to understand what was going on. I don't think that you just consult and say, hey, give me a five-minute rendition and then go ahead and do whatever you want to willy-nilly. I think in this case... Is there evidence that that's what occurred here? Yes, Your Honor. I think that there is, because there's evidence specifically as to the claim of ineffective assistance of counsel for failure to move to suppress this July 4, 2012 statement. Well, you've got the other party to the conversation, so did Mr. Jake submit an affidavit saying counsel didn't talk to me enough, he didn't seem to understand my allegations, I kept trying to get him to understand them and he just didn't seem to get it, or something to that effect? Are you talking about an affidavit pertaining to post-conviction counsel? Yeah. There wouldn't have been any, respectfully, Your Honor, there wouldn't have been any procedural posture for him to have done that. That would be, if we were here arguing... So he didn't argue that before? No, he didn't argue that before. So this is bringing forth brand new from... Well, this is arguing that post-conviction counsel dropped the ball by the way that he misunderstood and mishandled... Which in no way is supported by Mr. Jake in anything he has filed or said. Your Honor, I'm unclear as to how he would have had the opportunity to do that at this point. Well, if he didn't talk to him ahead of time, as you say he didn't... No, Your Honor, I don't want to mean to interrupt you, but I'm not saying he didn't... I'm sorry, you're right, you're right. I misspoke. It didn't talk to him adequately. There's nothing by Mr. Jake on file in the trial court indicating that he didn't believe his lawyer talked to him adequately. No, Your Honor, there isn't. And I think this goes to, I believe it's the Perry case that we cite from the first district, so persuasive authority obviously not binding on this court. But the court said you can't expect a pro se petitioner to basically stand up and interrupt the proceedings as his lawyer is presenting his version of the case and say, Your Honor, wait a minute, this is completely wrong. He didn't talk to me well enough. I don't understand what he's saying. I don't understand why he's saying it that way. We don't put that burden on post-conviction petitioners. We don't put that burden on trial defendants to stand up. Well, counsel, I just wonder, I mean, where do we draw the line? So we know that this certificate is required. We know a presumption comes into play when the certificate is filed. We take the lawyer at their word. So when does this slippery slope end? I mean, I don't like the results. So now you didn't talk to me adequately enough. You didn't ask me enough questions. You didn't check into it enough. I mean, how do you quantify that? Well, Your Honor, maybe it was inartfully worded, and that would be 100% on me. I've certainly been guilty of that before. The point is that he didn't understand the claim. And it's clear that he didn't understand the claim because of the way that he raised the claim in the post-conviction petition. So specifically, Treshawn says, there was a failure of my trial counsel's part to move to suppress this July 12th. July 4th, 2012. Right, the statement. He didn't put the date in the statement, but he said there was a failure to suppress statement, singular. Okay, that's the only, he made three statements. That's the only statement that's amenable to suppression, at least as far as what we know from the trial record. There's other stuff about the other statements. We don't know that. Is this the strongest argument on appeal, or is there another issue that you believe is stronger? In all seriousness, you raise another issue in regards to the amendment of the post-conviction petition. Which do you think is the stronger argument, the adequacy of the communication or the failure to amend? I think the failure to amend, Your Honor. And I recognize and appreciate the question, and I'm happy to move there if you feel like we've covered enough ground. I want to ask you one question about the July 4th, 2012 statement. There was testimony from the mother of the girlfriend who gave Treshawn and his girlfriend a ride. Isn't her testimony pretty much in line with what's contained in the July 4th, 2012 statement? Where she picked them up, where she dropped them off, that type of thing. I'm not really understanding what it is about the July 4th, 2012 statement that really hurts your client. Okay, so two things I would say about that, Your Honor. First of all, the point of the statement, if this were the only statement that were admitted, this would be a fine statement. What the state did at trial was to admit the three statements, look at them side by side, and say, look at these little facts that kept changing. Yeah, you talked about pointing out inconsistencies between the statements. So then that takes me to the question of, so is your position that this statement should have been suppressed or that they all should have been suppressed? So you only get the inconsistencies when they all come in. Well, I think this one should have been suppressed. And then you've got one less, I call it a data point, but you've got one less point from which to draw the line that says, you know, there were a few facts that changed from this statement to the second statement, a few more that changed from second to third. So you'd be in the position of having just the second and the third to look at. The other thing I would say about it, Your Honor, as far as prejudice is, to some extent that's a harmless error argument. And if Your Honors agree on the 651C on either prong, either the one we've talked about or the failure to amend properly, then harmless error and considerations of prejudice, like what's the prejudice to Treshawn, wouldn't he lose anyway, that's a consideration that ought to be addressed on remand once counsel has amended the petition properly, gotten whatever evidence there is, put the attorney on the stand and say, hey, what were you doing, why didn't you suppress this statement, et cetera. So we're not supposed to consider prejudice at all? Your Honor, if you find that counsel did not do his duty under 651C, then no, you're not supposed to consider prejudice at this point. That's under Illinois Supreme Court's decision in Suarez, and I think that was just reaffirming a longstanding position of the court that we don't get a constitutional right to counsel on post-conviction, we just get this limited set of things that counsel has to do. And when counsel doesn't even do that, the Illinois Supreme Court is not willing to say, well, there's no prejudice anyway, probably if this had been fully developed and argued correctly, he still would have lost. The court says we're going to send it back, have it done properly, have the procedure complied with, and see what shakes out in the trial court. So to the amendment. Yes, to the amendment. So counsel, in this case, as I said, not only did he fail to understand the claims, but when he went to argue the claims and amend the petition, he failed to present them adequately to present the claims. And, in fact, this is to hoarse the record and beside the point, but I've never seen an attorney do this, basically spend two-thirds of a quote-unquote amended post-conviction petition arguing why his client's several other claims were frivolous and patently without merit. Now, I will say, as I said in the briefs, I think counsel did this in good faith and reliance on his understanding of People v. Kuhner in the Illinois Supreme Court. And I believe his understanding was any claim that's raised in a pro se petition that I don't raise or I don't at least litigate fully in the— excuse me just a second, Your Honors. I'm having a Marco Rubio moment. That if I don't raise all these claims, I have to explain why I don't raise them. As Your Honors understand, People v. Kuhner only pertains to cases in which an attorney feels like he has an ethical obligation to withdraw completely because all the claims are frivolous. There's not even one claim in a pro se petition that he can advance. It doesn't apply to a situation here where Treshawn raised four separate claims. One of those claims had three subparts of his claim about moving to object to hearsay. So out of those four claims and three subclaims, post-conviction counsel raised two claims. That part in and of itself is not a violation of 651C. But then he went on to explain why all these other claims, including the suppression claim about which we've been talking, were frivolous. You wrote in your brief that the effect of that would probably be that it diminished his credibility in the trial court's eyes as to the remaining claims. Is that right? Yes, Your Honor, and I don't see how it could fail to do that. But at the first stage when it's the defendant without the assistance of counsel, there are usually going to be claims of this sort that post-conviction counsel later jettison. And the trial court's very familiar with the procedural aspects and that that happens routinely. So why in this instance is it especially bad? I think it's especially bad. Your Honors understand, and for those of you who were on the circuit court bench, I don't unfortunately know all of your biographies. All three were. Okay. So you understand what's going on in some of these cases. And sometimes you've got no evidence on the claim. And so he says, well, I'm going to present this. And he says, well, Your Honor, for the rest of that, I'm going to stand on my petition. You have my client's words, et cetera, et cetera. Other times maybe you just want to focus on a couple of claims, hammer those, because those are your best claims, and still leave those other ones in there. In this case, he went piece by piece and explained why he didn't believe these claims were good. He thought they were frivolous. Not only that, but he didn't apply the correct law when he did it. So he went to this extraordinary step of arguing against his client, and he didn't even do a very good job of it for a couple of reasons. One, going back to the first argument that we had, he didn't understand that Treshawn's claim was only about this one statement, not all three of the statements. So he was making this argument about all three of these statements were fine, they should have come in. Second, he was willing to give trial counsel the benefit of the doubt by saying, well, this was probably trial strategy that he wanted these things in. Maybe it was, but that's a thing that he could ask trial counsel in a Thursday's evidentiary hearing, as he did on this other claim, this claim about why didn't you impeach Ms. Pondia. And in that case, trial counsel said, well, with everything that was going on, I just forgot. Why post-conviction counsel couldn't have gone through the same thing with these other claims and said, why didn't you move to suppress the July 4, 2012 statement? Then we probably wouldn't be here, depending on what the answer was. Or at least we wouldn't be here in this posture. Not only that, but in arguing that these claims probably wouldn't have been suppressed or might not have been suppressed anyway, counsel says, well, he was Mirandized before all of these statements. True, as far as the record goes, it says he was Mirandized. But we know if there's been an illegal arrest, that the attenuation argument under the United States Supreme Court's decision in Brown is not only were there Miranda warnings, but what were the intervening circumstances that came between the illegal arrest and the giving of the statement, what was the flagrancy of the police misconduct, and what was the time period that passed between the arrest and the statement. All three of those things would go against the state and in favor of my client in this case. Miranda is the only factor that would support the state, and that's the only one for some reason that counsel dwelt on in saying, well, not only was this probably trial strategy, but I don't even know if these things could have been suppressed anyway because he was Mirandized before all of them. If I'm writing the law, which I'm not, but my strong preference would be that you don't ever go through this hoop of arguing against your client to begin with, but if you do, get the law right. And I don't think in this case he even did, so he's arguing to the judge, my client's claims are frivolous based on erroneous understanding of the constitutional law. And this is all based on your position that counsel inaccurately interpreted your client's claim as far as the interviews and suppressing. Well, Your Honor, even if he understood that claim, even if he was crystal clear about that, still in going through this step of arguing against the client, that's wrong. That can't be compliance with 651C. And he's wrong constitutionally about why those things would come in. Does that answer your question or not? Yes. Okay. I was told there was going to be a time on that. I'm the timer. You're the timer. Okay. Well, Your Honors, I'm all the way through my notes, so I'm happy to stand here and answer questions all day. But if you don't have any, I would just ask for reversal, remand for further second stage proceedings. I don't see any questions at this time. Thank you. Mr. Manchin. Thank you, Your Honors. May it please the court, counsel, I'm with the appellate prosecutor's office, and I'm here on behalf of the state. The defense counsel in the post-conviction petition did exactly what he's supposed to do. He consulted with the defendant, he read the record, and he amended the petition as necessary. The defendant's argument has been shifting from one point to another. Initially, he says it is as a matter of law that you cannot file an amended petition where you explain why you're not raising something. It has now been shifted to saying he was wrong about his analysis as to why he's not raising this issue. So I'm not sure exactly which of those allegations I'm going to address today. As far as the claim that you cannot explain why you're not raising anything, I do not believe that that is supported by anything in any of the cases ever decided. Admittedly, this is the first time. What usually happens is the attorney files an amended post-conviction petition that leaves out an issue. We get to appeal, and the automatic claim is post-conviction counsel was ineffective because he left out issue X. And this court has to guess, why did the attorney leave out issue X? So counsel did us a favor? I think he did you a favor. I think it is perfectly consistent with the case with Perry and Necht. And in Perry it says, when an attorney is faced with a petition that he believes to be frivolous, he has two choices, stand on the petition and explain why it's not being amended or withdraw from the case. What counsel has done here is consistent with that ruling. He did not determine that everything was frivolous. He found that some had merit, potential merit, and some did not. So he filed an amended petition saying, these are the ones we want to raise. These are the ones I'm not raising, and this is why. That gives the trial court the opportunity to say, no, counsel, you're wrong. That is not frivolous. That is not patently without merit. I'm going to consider it despite your motion saying I'm not going to raise it. The trial court has the opportunity to consider the merits of the omitted claim because of the way in which counsel has filed his petition. That is perfectly consistent with the obligations of counsel to consult, read the record, and make the amendments necessary. The courts have made it clear that when a claim is frivolous, an amendment is not necessary, and counsel may not raise an issue he knows to be frivolous because if he's doing so, he's violating his ethical obligations to the court. So I think that the procedure used by the counsel here, Ms. Albright, was perfectly in line with the requirements of what post-conviction counsel is supposed to do. He read the record. There is nothing in this record to show that he did not understand the defendant's contentions. He did not address the merits of whether a motion to suppress should be filed or could have been filed or could have succeeded. He approached it from the viewpoint of prejudice. Why in the heck would you want to suppress the statement to the police that is perfectly consistent with your defendant's alibi? Why do you want to suppress that? So the defendant's claim that you have to ignore prejudice is wrong. You have to look at prejudice in order to determine, okay, was post-conviction counsel's representation adequate in this place? Was he providing reasonable assistance when he decided, I am not going to raise this issue because I do not believe it has any merits and this is why I don't believe it has any merit. I don't believe it has any merit because why would you want to suppress this? That the admission of the statement could not have prejudiced the defendant in any sort of way that if anything it bolsters his defense that he is consistently with minor things saying, I was not there at the time of the shooting. I arrived afterward. I don't know anything. Well, Mr. Manchin, do you agree that counsel was not required to explain why he did not include certain claims? There has never been any case that says he's required to. Was he arguing against his client? I don't believe he was. I don't believe he's arguing against his client any more than an attorney in a clinical hearing would be arguing against his client. In a clinical hearing, the defendant claims post-trial, my attorney was ineffective because he did X, Y, Z. Counsel gets the opportunity to say, no, this is why I did X, Y, Z.  Counsel's being questioned and counsel's performance is being questioned, that wasn't the case here. No, I admit that they're different, but I think that the type of representation there is no different saying, okay, this is why I'm doing something as not being advocating against your defendant. You're saying, okay, this is a potential issue. I am not raising it, and this is why. So, court, you have the opportunity to say, no, you're wrong. You should have raised this. We're going to go ahead and move this to the third stage hearing, and you raise this issue and present it there. So should we encourage counsel to do this? I think that, yes, that it is a procedure that would be, I would say, would be recommended. You have the, like I said earlier, when a post-conviction attorney files an amended petition, I'd say in 90% of them he leaves off a lot of the defendant's claims, and inevitably the claim on appeal is he was ineffective because he left out these issues. The courts have been clear that counsel does not have an obligation to raise every single issue that is in the defendant's post-conviction petition. He doesn't have to stand on an allegation that he believes to be frivolous or without merit, and under Perry, if he does stand on the brief on the defendant's claims, he has to explain why he didn't make any amendments to it, which would get into this, okay, I didn't amend it because there's nothing there to admit that is invalid, that there's no merit to it. The problems that have arisen in some of the cases cited by the defendant where the attorney appears at the date of the hearing and says the defendant's petition should be rejected is that the defendant has not been given notice that the attorney is going to be doing this. Here the defendant was given notice that his attorney was abandoning these particular claims and was told why. There was a period of time between the filing of the motion, the admitted petition, the state's response, and the hearing in which the defendant could have written to the court saying, hey, my attorney is ineffective. The inmates in Illinois are not hesitant at all to write the courts about complaining about their attorney saying, he didn't consult with me, he did not, anything like that, and we don't have that here. We don't have the defendant saying, hey, my attorney misunderstood or anything like that, even though he had the opportunity to have done so. The counsel, like I said, the counsel's position was unusual, but I do not think that the very fact that he filed the petition in the way he did makes it a per se ineffective assistance to counsel or unreasonable assistance to counsel. Then we get to the question of should he have omitted this issue? That's a separate issue, and I think his determination was a reasonable one. Well, it might be arguable that there could have been grounds to suppress, as he says, why? Why do you want to suppress a statement that is favorable to your client? Well, opposing counsel says pointing out all these inconsistencies hurt his client. Well, it cuts both ways. The inconsistency cut against him, but you also have the fact that three times he's browbeaten by the police and three times his statement is pretty much the same with some minor differences. So to say that it's a toss-up for counsel in the trial court, do you let it come in because it's favorable and take the lumps because he can't keep his story completely straight, or do you suppress one and still have the other two, or is it better to have three statements saying I was not there rather than the two? So I think that the post-conviction attorney's approach to this issue was not unreasonable and does not establish that the defendant received unreasonable assistance in this particular proceeding, that there is no evidence or no indication in this record that he did not consult, that he was not aware of the issues, or that he did not read the record. His petition shows very clearly that he, in fact, read the record. His analysis of the case of the issue shows he knew exactly what the defendant said should have been done and said, no, I do not believe that that claim has any merit, and this is why. I do not believe that it's ineffective assistance of counsel, and I would suggest to this court to affirm the decision below. Thank you, counsel. Any other questions? Thank you. Any rebuttal, Mr. Harris? No more than five minutes' worth, Your Honor. I would say, first of all, counsel kept using the language unreasonable assistance. This is not an unreasonable assistance claim. We're not here saying that post-conviction counsel rendered unreasonable assistance under the Act. We're here saying that under 651C, he didn't comply with the rule, and the difference in that is if you don't comply with the rule, you don't get your error excused on the basis of harmlessness. If we're here arguing that what counsel did complied with 651C, but he still somehow dropped the ball or should have done something different, then we would have to be pointing out how is this prejudicial and having these other arguments. Mr. Harris, in your original argument, you indicated that we are not to consider prejudice. Here in your client's appeal, Mr. Manchin indicated we can't help but consider prejudice. How do you respond to his argument? Well, other than to disagree, the response, I would say, is just the same that we had in our brief, which is that we're not supposed to be arguing about prejudice. We're not supposed to be considering prejudice. But even if we are, giving the state the benefit of the doubt on that, there still is prejudice, and the way that the claim was evaluated was still wrong. But our position is that, no, prejudice, if you look at whether 651C was complied with, and let's zero in on this amendment of the petition. The rule says not just to amend the petition, just make any amendments necessary. So this is gratuitous. For one thing, it's not necessary. But if you look at it from the other side, he amended it to the point, this is definitely not amending a petition as necessary to advance the petitioner's claims. If you find that under 651C, then prejudice is a situation for the circuit court on remand. Counsel spent some time saying, well, you know, you could go back and forth as trial counsel, saying, do I let this in, do I not let this in? That's all very fertile territory to be explored on direct and cross-exam of trial counsel in a third-stage evidentiary hearing. You know, counsel, what was going through your mind? Why did you let this statement in? Why did you not object to this, et cetera, et cetera? We don't have to argue about it in the appellate court. We can ask the people who were there. Counsel said that it was significant that even under being browbeaten by the police three different times, my client didn't change his story in that first statement. I would say that to the extent that we're talking about the constitutionality of the statement, coming in, the browbeating of the police would be one more thing to consider on the flagrancy of the police misconduct. I would say, and your honors know this well, if I come here with a six-issue brief, I'm not going to argue all six issues in the 20 minutes that I'm allotted. I'm going to say, your honors, unless you have an objection, I'm going to focus on issues one and two today and leave the rest for briefing. That doesn't mean I think those are bad claims. But now if I got up here and said, well, your honors, on second thought, I think all those claims are completely ridiculous. I don't expect that you would do what counsel says the trial court might have done here, which is to jump in and say, well, now, counsel, I disagree completely. That's a great claim, and you should be arguing it. Counsel said that this court should encourage this kind of procedure in the future going forward for other post-conviction counsel. If that's the case, if this is such a salutary thing for post-conviction counsel to do, I don't know why we don't have every attorney do this. Why don't we do this in the trial court and say, well, your honor, I thought about alibi, but he really doesn't have a very good alibi. And I want to put on the record, he told me about these three or four witnesses. I think those witnesses are completely full of beans. I'm not going to put them on. Of course we don't do that. And would it help the appellate court? Sure, it would help the appellate court deny a claim. It would help the appellate court to know exactly what was going on. But the question isn't, does it help the court? The question is, does it advance the client's claim, which is the duty that the attorney has? Counsel compared this to a Krankel hearing, and Justice Holder White, I think you appropriately pointed out, if you raise a Krankel claim, you have this ineffectiveness claim against your trial counsel. You get appointed different counsel to argue that claim if the court finds that this is a good claim. You're not sitting there pro se trying to take your trial attorney down and get a new trial. That's a situation that we have here where we've got a guy, my client was 19 years old when this crime was committed. And he's supposed to do what? He's supposed to write a letter to the court, apparently, and say, you know what, I don't agree, Your Honor, with my post-conviction counsel's behavior. Counsel, you're out of time. Okay, well, Your Honor, that's okay. I ask for you to reverse it for me, and thank you. We'll take this matter under advisement and be in recess at this time.